UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

KEILA MARIE PENA, as Personal Representative of
the ESTATE OF KEILYAN HERNANDEZ, deceased,      CASE NO.:_____

       Plaintiff,

vs.

HELIDOSA AVIATION GROUP, S.A.,

       Defendant.
_____/

# COMPLAINT

Plaintiff, Keila Marie Pena, as Personal Representative of the Estate of Keilyan Hernandez, deceased, sues Defendant, Helidosa Aviation Group (hereinafter, "Helidosa"), and alleges:

## INTRODUCTION

1. This is an action against Helidosa for the death of Keilyan Hernandez, the Plaintiff's 21-year-old-daughter.

2. Ms. Hernandez was a resident of Osceola County, Florida, at the time of her death. From Florida, Ms. Hernandez's father, Jose Angel Hernandez, contracted with Helidosa to charter flights to pick up members of their family in Orlando, Florida and take them to the Dominican Republic for a vacation. The flight left from the Orlando, Florida airport (MCO), on December 9, 2021, and was scheduled to return on December 15, 2021.

3.      On December 15, 2021, Helidosa's plane, a Gulfstream IV, carrying Plaintiff's daughter and other members of her family, departed from the Dominican Republic. It crashed 16 minutes after takeoff, killing all on board.

## PARTIES

4.      Keila Pena is Ms. Hernandez's mother and is the Personal Representative of the Estate of Keilyan Hernandez. In that capacity, she brings suit on behalf of herself as heir and on behalf of the Estate for all available damages. Ms. Pena is a resident of Osceola County, Florida.

5.      Helidosa is an air charter company operating flights in and out of this jurisdiction, including the subject flights, and is based in Santo Domingo, Dominican Republic.

## JURISDICTION AND VENUE

6.      This is an action pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal, May 28, 1999, T.I.A.S. No. 13,038, ICAO Doc. No. 9740 (effective Nov. 4, 2003) (hereafter, the "Montreal Convention"), a multilateral treaty that applies to all international carriage of persons by aircraft for reward.

7.      Jurisdiction and venue are proper in this Court.

8.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(2) and (c)(1), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of the State and a citizen of a foreign state.

9.      This Court has personal jurisdiction over Helidosa pursuant to section 48.183(1)(6)(a), Florida Statutes, because Helidosa caused injury within this state by acts and omissions which occurred outside this state, and Helidosa was engaged in solicitation of and service activities within this state. Specifically, Helidosa contracted with Jose Angel Hernandez,

Ms. Hernandez's father, within Florida to provide air charter services to and from Florida, including the subject flight that caused Ms. Hernandez's death, and as a result, her mother's and her Estate's injuries occurred in this state.

10. Further, this Court's exercise of personal jurisdiction over Helidosa comports with due process under the Fourteenth Amendment to the U.S. Constitution.

11. Helidosa's contacts with Florida, *i.e.*, its marketing and offers of charter flight services to and from the state, are related to Plaintiff's cause of action because it is precisely one of those charter flights to Florida that resulted in the death of Plaintiff's daughter. But for Helidosa's activities in Florida, Plaintiff's daughter would never have boarded the flight that led to her death.

12. Further, Helidosa purposefully availed itself of the forum by operating flights into and out of Florida's airspace, using its infrastructure, and marketing its services to Florida residents.

13. It is reasonably foreseeable that Helidosa's intentional activities in the forum state—the operation of international charter flights—could lead to litigation here.

14. Finally, the Court's exercise of jurisdiction over Helidosa would not violate traditional notions of fair play and substantial justice.

15. Jurisdiction and venue are likewise proper in this Court pursuant to Montreal Convention Article 33 because the place of destination was within this district.

**FACTS GIVING RISE TO THIS CLAIM AND APPLICABLE TO ALL COUNTS**

16. Mr. Jose Angel Hernandez, the decedent's father, contracted with Helidosa, an air charter company, to pick up members of their family for a family vacation at Orlando International

Airport. The family departed Orlando on December 9, 2021, to the Dominican Republic, with a contracted round-trip return flight on December 15, 2021.

17. On the date of the family's scheduled flight to return home to Orlando, Helidosa's Gulfstream GIV, with registration number HI-1050, arrived at the Higuero/La Isabela-Dr. Joaquin Balaguer Airport at 12:35 p.m. local time on December 15, 2021, following a flight from San Juan, Puerto Rico.

18. The Helidosa flight crew reported mechanical problems relating to the aircraft's ground spoilers.

19. The aircraft was subsequently towed to the Helidosa hangar for maintenance. Helidosa mechanics worked for three hours to replace the ground spoiler actuators on the right wing. The aircraft was then towed back to the apron for the flight to Orlando, Florida.

20. During the initial run up before the flight, the flight crew performed a control check. The spoilers on both wings extended, but only those on the left wing retracted again. The Helidosa flight crew did not correct this unreasonably dangerous condition. They taxied the aircraft for departure with three spoilers on the right wing still extended.

21. An aircraft is in an unreasonably dangerous condition when its ground spoilers are extended during takeoff. Such a configuration impacts the aircraft controllability and prevents the aircraft from achieving appropriate lift.

22. The ground spoilers on the right wing were not functioning properly because the Helidosa mechanics improperly connected the new spoilers during the maintenance.

23. Following takeoff, because of the improperly deployed spoilers, aircraft control problems developed immediately. The Helidosa flight crew declared an emergency and requested vectors back to the airport.

24. As the situation progressed, the Helidosa flight crew decided to divert to Santo-Domingo Las Americas International Airport, where they were cleared to land on runway 35.

25. On final approach, the aircraft was destroyed when it struck terrain while attempting to make an emergency landing at Las Americas Airport resulting in the death of two pilots, a flight attendant, and six passengers, including Plaintiff's daughter, Keilyan Hernandez.

**COUNT I – CLAIM FOR RELIEF UNDER THE MONTREAL CONVENTION**

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

27. The subject flight constitutes an "international carriage" of persons performed by aircraft for reward, where the flight was contracted to occur between two State Parties, and therefore the Montreal Convention applies.

28. Pursuant to Article 17 of the Montreal Convention, Helidosa is liable for the damages Plaintiff has sustained due to her daughter's death because the accident that caused her death took place on board the aircraft.

29. Indeed, the plane crash constitutes an "accident" within the meaning of the Montreal Convention.

30. As a direct proximate result of the subject "accident," Keilyan Hernandez died prematurely.

31. Under Article 21 of the Montreal Convention, Helidosa is strictly liable for all damages associated with Ms. Hernandez's death because Helidosa, who has the burden of proof under the Montreal Convention, will not be able to prove that the damages were not caused by "the negligence or other wrongful act or omission of [Helidosa] or its servants or agents" or that the damages were caused "solely due to the negligence or other wrongful act or omission of a third party."

32. Helidosa's negligence caused Ms. Hernandez's death.

33. Helidosa owed a duty to Ms. Hernandez to, among other things:

   a. Conduct air carriage operations in a reasonably safe manner;

   b. Perform proper flight safety checks to avoid injuries to passengers;

   c. Properly train and supervise its flight crew in the operation of flight equipment and aircraft so as to prevent injury to passengers;

   d. Properly maintain, repair, and test its flight equipment and aircraft so as to prevent injury to passengers;

   e. Performing a proper installation of the ground spoilers on the subject aircraft and/or installing defect-free ground spoilers on the subject aircraft;

   f. Hire competent mechanics to perform maintenance on the subject aircraft;

   g. Hire competent flight crew to conduct the flight operations; and/or

   h. Maintain and/or implement adequate safety policies, safety measures, and safety procedures necessary to protect passengers from the foreseeable danger posed by faulty aircraft and flight equipment.

34. Defendant Helidosa breached each and every one of the aforementioned duties by:

a. Failing to conduct air carriage operations in a reasonably safe manner;

b. Failing to perform proper flight safety checks to avoid injuries to passengers;

c. Failing to properly train and supervise its flight crew in the operation of flight equipment and aircraft so as to prevent injury to passengers;

d. Failing to properly maintain, repair, and test its flight equipment and aircraft so as to prevent injury to passengers;

e. Installing defective or improperly installing the ground spoilers on the subject aircraft;

f. Failing to hire competent mechanics to perform maintenance on the subject aircraft;

g. Failing to hire competent flight crew to perform the flight operations; and/or

h. Failing to maintain and/or implement adequate safety policies, safety measures, and safety procedures necessary to protect passengers from the foreseeable danger posed by faulty aircraft and flight equipment.

35. Ms. Hernandez's death was not the result of any third parties' act or omission and was solely due to Helidosa's negligence.

36. Helidosa's breach of the duty of care it owed to Ms. Hernandez proximately caused her death and caused damages to Mrs. Pena, as sole heir of Ms. Hernandez's Estate, and to the Estate of Keilyan Hernandez.

37. Defendant, Helidosa, is therefore liable to Plaintiff for all compensatory damages including, but not limited to, pain and suffering of the survivors, beneficiaries, and heirs of decedent; lost society, companionship, guidance, and services of the decedent to the survivors, beneficiaries, and heirs; loss of support in money or in kind; funeral expenses; lost income; loss of

net accumulations; and any other damages to which Plaintiff, the survivors, beneficiaries, and/or the Estate may be entitled which this Court may find applicable. The losses are either permanent or continuing in nature, and Plaintiff will suffer the losses in the future.

      WHEREFORE, Plaintiff, Keila Pena, as Personal Representative of the Estate of Keilyan Hernandez, demands judgment for damages against Defendant, Helidosa, plus interest and costs. The Plaintiff further demands trial by jury on all issues so triable.

Dated:  December 14, 2023                          Respectfully submitted,

                                                    */s/ Ricardo M. Martinez-Cid*
                                                    Ricardo M. Martínez-Cid (FBN 383988)
                                                    Lea P. Bucciero (FBN 84763)
                                                    PODHURST ORSECK, P.A.
                                                    1 SE 3rd Avenue, Suite 2300
                                                    Miami, FL 33131
                                                    Tel: (305) 358-2800
                                                    Rmartinez-cid@podhurst.com
                                                    Lbucciero@podhurst.com
                                                    RMCTeam@podhurst.com

                                                    *Attorneys for the Plaintiff*